25-2008-5, Fountaine v. U.S. Bank, and we'll hear from Mr. McElroy first. Thank you, Your Honor. May it please the Court, my name is Michael McElroy from Hinshaw & Culbertson, and I represent the defendant in this case, the appellant, U.S. Bank National Association. This case really boils down to just a single question of fact that should have been resolved in U.S. Bank's favor and resulted in a judgment that they take nothing. The Court, in its conclusions of, Fountaine v. U.S. Bank, Conclusions of Law, Conclusions of Law Number 22, stated, There is no evidence before the Court that affirmatively identifies who allegedly sent the December 15th payoff statement to Texas Title. The very next sentence should have been, Therefore, judgment is rendered in favor of U.S. Bank that plaintiffs take nothing on their claims. That's the primary issue in this case. To compel U.S. Bank to release its deed of trust when it received undisputably less, about $36,000 less than what it was owed on its loan, to invoke Texas Finance Code Section 343-106-G, the plaintiffs had the burden to prove that U.S. Bank's mortgage servicer, SPS, provided what we call the altered payoff statement to Texas Title. That was the plaintiff's burden. U.S. Bank had no burden to prove that SPS did not send it or who did send it. And the evidence, the only evidence in the case, showed that it came from someone other than SPS. Even if there was some evidence to support the conclusion that SPS provided the altered payoff statement to Texas Title, the trial court still should have rendered judgment in favor of U.S. Bank because it's undisputed that Texas Title did not comply with the Texas Finance Commission regulations governing the manner in which payoff statements were required to be requested and received by the title company. That's an undisputed issue right there because Texas Title itself admitted that it followed its own policies and procedures, not the Texas Finance Commission's regulations, and those two did not align at all. The evidence on whether SPS provided the altered payoff statement to Texas Title came from the testimony of Michelle Simon at SPS and Sandy Thompson at Texas Title, as well as the real payoff statement and the altered payoff statement themselves. Ms. Fountaine also testified, but understandably she had no knowledge of how or who provided the altered payoff statement to Texas Title, and she had no knowledge of whether or not the fax number from which the altered payoff statement was provided to Texas Title was affiliated in any way with SPS. In Ms. Simon's testimony, she explained that on December 15, 2021, someone identifying themselves as one of our borrowers, Ephraim Del Rosario, requested a payoff statement. SPS generated the real payoff statement and faxed it to Mr. Del Rosario, or someone they believed was Mr. Del Rosario, at fax number 800-878-5776. And the real payoff statement and evidence in Defendant's Exhibit 16 bears that out. Ms. Simon also unequivocally testified that SPS did not alter its own payoff statement and generate what we call the altered payoff statement or fax it to anybody or provide it to anybody, let alone Texas Title. Ms. Simon further testified unequivocally that the fax number from which that altered payoff statement was provided to Texas Title, that 800-878-5776, the same fax number that SPS faxed to Mr. Del Rosario, the real payoff statement, that that fax number was never owned by, used by, or affiliated in any way with SPS or U.S. Bank for that matter. And Ms. Thompson did not controvert any of this testimony. In her testimony, she admitted that Texas Title received the altered payoff statement from that fax number, 800-878-5776. She further admitted she has no evidence that that fax number was ever used by, owned by, or had any affiliation with SPS. I mean, didn't the court find, based on the record, the court concludes that SPS provided the December 15th payoff statement to Texas Title? That's exactly what the court found and that's what we dispute. We believe that there is no evidence that that ever occurred. There's nothing in the record to support that finding and it's an implausible finding on top of that. And that finding, by the way, is immediately after, the sentence after the finding that I read. But there is no evidence before the court that affirmatively identifies who allegedly sent the December 15th payoff statement to Texas Title. If you make that finding, you can't make the second finding, particularly when the plaintiffs bear the burden to prove that it came from SPS. Ms. Thompson also conceded that if the fax number is not affiliated with SPS, that Texas Title got it from someone other than SPS. That's the totality of the evidence that the court made the finding that Judge Jones just recited. It's an implausible finding because it defies logic and common sense. Let's take away some other possibilities of why SPS would change its own payoff statement. Maybe it wasn't owed actually $226,000 and maybe it was really owed $189,000. But there's no evidence to support that. The evidence is to the contrary. Ms. Simon testified that SPS generated the real payoff statement that they provided to Mr. Del Rosario on December 15th, 2021. And when asked to compare the two payoff statements, the real one and the altered one, she said that the actual amount due was reflected in the real payoff statement in the amount of approximately $226,000. And Ms. Fontaine and Ms. Thompson admitted they didn't have any knowledge of what the amount due was. There's also no evidence of any type of an agreement by SPS or U.S. Bank to accept less than what the full payoff was. Or of any type of genuine dispute between SPS and the Del Rosarios about what the amount owed. That would support any type of accord and satisfaction argument. You know, I hate to mention it. Why do we have diversity jurisdiction? U.S. Bank is a national bank. Oh, that's right. So we don't worry about the amount in controversy. We do worry about the amount in controversy. And actually there was a motion to remand that was filed and denied. They argued both that there was not diversity of citizenship and that the amount in controversy wasn't satisfied. They actually withdrew it at the preliminary injunction hearing. But I don't think that the arguments were supportable. I think that the amount in controversy is the value of the property per Fifth Circuit precedent. Oh, I see what you're saying. Because they're asking for injunctive and declaratory relief. Right. Yeah. Okay. Ms. Simon testified that there was no agreement to accept less than the total amount due. And there was no, any dispute between them and the Del Rosarios. Ms. Fountaine and Ms. Thompson did not controvert any of that testimony. They both admitted that they had no knowledge of any type of an agreement. So what we're left with now on the plausibility argument is you have SPS that generated a real payoff statement in the amount of $226,000 on December 15th. And then faxed it to 800-878-5776. On the same day, they altered that payoff statement to reduce the amount that they're going to get paid by $36,000. And they faxed it to the same fax number that they don't own, they've never used, and they don't have any affiliation with. But they faxed it to that, from that same fax number to Texas Title. It's implausible that that would have occurred. It's more plausible that a third party was involved manipulating the payoff statements. I mean, the evidence, there's other evidence in the record that this occurred. Take the November 22nd, 2021 payoff statement. Well, what do you say about the court's finding that the plaintiffs were entitled to rely on the lower payoff statement? I mean, this whole provision is intended to protect the mortgagor. To protect the buyer and to protect their lenders, correct. Right. And to have clear title to properties. Right. So these disputes don't arise. And when a mistake like this was made, here's the problem. There was a third party that did this. It wasn't SPS. So who bears the responsibility for the mistake of accepting a altered payoff statement to be relied upon? I'm not blaming the plaintiffs in this case. I don't think the plaintiffs did anything wrong. I don't think SPS did anything wrong. There was obviously a third party involved. Well, how come you didn't call the police or do an investigation or offer any, you know, make any attempt to dispel or find out how the incorrect statement had been generated? Well, I think we know how it was generated. I think someone just altered it. Well, you think you do, but that's, maybe somebody in SPS made a serious mistake and they haven't been willing to admit it. I mean, but that's not my point. The law is to protect. It puts the burden on the bank, doesn't it, if there's an incorrect payoff? No, I think it puts the burden on the title company. I think the title company was in the best position to prevent this from happening. If they had followed the laws, the regulations set forth by the Texas Finance Commission, this probably doesn't happen. They allowed this to happen by skirting those regulations. If there's two parties that you have to look at and say, which one of these two should bear the loss on this one, I don't think it's SPS. SPS didn't even know about the existence of this altered payoff statement until a year later, when Texas Title called it and said, why didn't you release your deed of trust? We had no knowledge of this. But let me talk about some of the evidence that I think that shows that there was clearly a third party involved. You've got the November 22, 2021 payoff statement. Ms. Simon testified that that payoff statement was artificially lower because just before it was produced, someone had made a large, more than $32,000 payment on the loan. And then after it was produced, that payment was returned for insufficient funds. And it happened more than once. So obviously someone, a third party, is trying to manipulate the payoff statements. And, by the way, that payoff statement was requested by someone who identified himself as Mr. Del Rosario and sent to that person. Texas Title received that same payoff statement by email from the seller of this property, Brandon Child. So how did Brandon Child get this payoff statement? I think the conclusion is it can be reached, reasonably reached, that Brandon Child was manipulating these payoff statements. Take the calls that Texas Title, I mean, I'm sorry, SPS received on December 16 and December 20. Now, the judge wrongly, I believe, and we argue in our brief, excluded the recordings of those calls. But those calls tell you a million different things. And one, it tells you that the real payoff was $226,000. Number two, and more importantly, it shows that someone, a third party, is so concerned that they're calling SPS to lie to them about the source of these funds. They knew that SPS was about to get a large wire from a title company that looked like a payoff that was $36,000 less than it was owed. But to carry out this scheme, that payoff could not be returned and SPS cannot be asking questions to the title company. So he calls them, and Ms. Simon testified about this, so it's in evidence. He calls them, says he sold another property, that this money is to be used to bring this loan current into paydown principle. Obviously, evidence of a third party involved in this. And the judge said, there is no evidence before the court that affirmatively identifies who U.S. Bank believes altered the payoff statement. Neither Thompson nor plaintiffs had any reason to believe, nor plaintiffs had any reason to believe that the December 15 payoff was not generated by SPS. Well, I think both of those findings are irrelevant. I think who the third party was is irrelevant because the plaintiffs had the burden to prove it was SPS. And they didn't prove that. No one had the burden to prove who actually provided it. As long as the evidence didn't show that SPS provided it, they lose the case. Well, we go back to these. What is patently fraudulent about the erroneous payoff statement? What is fraud? It doesn't state the correct amount due. But other than that. Well, that's the important thing, though. Well, excuse me. I mean, to all intents and purposes, it's SPS. It looks like, you know, it's exactly like the other one, the updated one that got sent later, except for the number. I agree, Your Honor, but I don't think that if we didn't. I mean, isn't that precisely the circumstance contemplated by the provision? Well, the provision contemplates that we provided it, though. That's the baseline. That's how you invoke it. Well, I understand that. And we didn't do it, and there's no evidence that we provided that. What is the standard for us to review that? I'm sorry, Your Honor. It looks like it was included. Excuse me. It looks like it was included in the conclusions of law, the statement by Judge Bennett that says the court concludes that SPS provided the December 15th payoff statement to Texas title. Is that a finding of fact, or are those conclusions of law? And what is our standard of review on that? Well, obviously you're not bound by any conclusions of law, and that's just a de novo review. Findings of fact are determined by whether or not there's any evidence in the record to support it, which also has an implausibility factor. I mean, you can make reasonable inferences from the evidence, but there has to be some evidence, and it has to be a plausible conclusion. Well, all right. You have a chance for rebuttal. OK. Thank you, Your Honor. All right, Mr. Keller. May it please the court? Yes, sir. After a bench trial, the district court made a series of findings. The district court found that Texas title had requested a payoff statement from SPS, that Texas title received a payoff statement in the exact manner that it requested it via fax, that it paid the exact amount that was stated on the payoff statement, and that SPS, the servicer, received that money and applied it to the account. Based on those factual findings, the court concluded that SPS sent the relevant payoff statement and that Texas finance code section 343.106G was satisfied. The issue on appeal, Your Honors, is not whether there is another inference which was possible. But whether the findings by the district court were clearly erroneous. They were not. Federal rule of civil procedure 52 was what controls the standard of review for this court. And again, this was tried to the bench. And ultimately, the court heard evidence in the form of testimony from a number of individuals that appellant's counsel has mentioned, as well as the documentary evidence, which led it to the findings of fact in this case. And I think it's important to mention one thing that was not raised by appellant's counsel regarding the payoff statements is that there was a prior payoff statement that was issued shortly before the contested payoff statement. And that payoff statement, Your Honors, was issued on November 22, 2021, relative to the December 15 payoff statement, not a long period of time. And SPS did not contend that it did not generate that payoff statement. And that payoff statement was in the amount of $188,201.42. The contested payoff statement, which appears to have been issued on December 15, was in the amount of $189,859.46. And so, Your Honors, the court heard all this evidence. And appellant's counsel seems to suggest that because the court found that there was no direct evidence of who sent the payoff statement, that somehow that answers the question. But the question is not whether there was direct evidence. The question is whether there was circumstantial evidence and whether this court finds that it has such a firm and definite conviction that the findings by the court were clearly erroneous that it would ultimately overturn the court's findings. So, again, Rule 52 specifically allows for use of circumstantial evidence. Here, the court, as I mentioned, made a number of findings of fact. It found that Texas Title requested that payoff from SPS, that it received that in the same method that it requested it, and that it matched substantially the SPS payoff that it had previously seen from the November 22 payoff, which, again, SPS does not contend was altered in any way. And it also substantially matches the subsequent payoff statement that, again, SPS does not contend was altered in any way. Texas Title wired the exact amount on the payoff statement that was received on December 15. SPS acknowledges that it received and that it applied those funds. And ultimately, the court concluded, based on those factual findings, that SPS provided that payoff statement. A question, Judge Douglas, that you raised to appellant's counsel is, was it a conclusion of law? There is a statement by the court in the findings in fact and conclusions of law that is actually listed under the conclusions of law section. And in that section, this is paragraph 22, the court says there is no evidence before the court that affirmatively identifies who allegedly sent the December 15 payoff statement to Texas Title. As such, based on the record, the court concludes that SPS provided the December payoff statement to Texas Title. And, Your Honor, I would contend that that is a factual finding and not a conclusion of law. Does he cite the finance code right after that? He does cite the finance code. Why does he do that? Because I was going to ask you about that section of the finance code and to walk me through it. But why would he cite that section right there? Because that was the basis of the court's finding, ultimately releasing the lien, is that this particular provision, 343-106-G, is what is in play here that ultimately allows for the release of the lien. And 343-106-G is a regulation which governs the financial industry and lenders. It does not govern title companies. And it's written for that purpose, as Judge Jones noted, to protect the buyers and the title companies and to allow for the ordinary progression of business in these title transactions. Title companies need to be able to request a payoff statement, rely on that payoff statement to know that when they pay the amount that the lender sends, that will be it and the lien will be released. And that's exactly what happened here. The court walks through a number of findings as to the section 343-106-G. It recognizes that the payoff amount was incorrect, that no correct payoff was sent. So as appellant's counsel noted, the servicer here, SPS, did receive these funds and they raised these issues about this unidentified individual and what impact this could have had. And maybe there's some question about whether there was a fraud committed on the lender. But the fact remains that it received those funds and it did not send a corrected payoff statement. And that is exactly what the statute provides for. It says request, receipt, acceptance, no correction. And that's what the facts show as found by the court. There's also some discussion in the briefing, Your Honors. I'm happy to get into these issues if the court is interested to ask any questions about the implications of the language in 343-106. There was an issue raised by appellant's counsel about the language arguably being mandatory. We contend that it is not, in fact, mandatory. But regardless, the purpose of that section is to direct the performance of the lender or the servicer. And the remedy is in the statute itself, not in the rule. And so we look back to the statute 343-106G to see the remedy, which again is the release of lien when these things are satisfied as the district court found it was here. So, Your Honors, to come back to the beginning. Just clear one thing up for me. Maybe a bad done question, but I'll ask it anyway. The G-1 says the difference between the amount included in the payoff statement and the correct payoff amount remains a liability of the former mortgagor owed to the mortgagee. How does that work in this case, if at all? That's correct, Your Honor. The liability does not disappear. The lien is simply released. The lien is released, but the liability doesn't. Correct. And that's exactly what the district court found here. That although the lien has been released, the underlying liability is not extinguished. It remains a liability. So what is the amount of the discrepancy? 36 or 38. 36. Correct, Your Honors. It's roughly that amount. Somebody still owes that. Correct. So, again, the applicable standard of review comes from 52. And the question, again, is whether the court has a firm conviction, a definite and firm conviction, that the findings of fact were clearly erroneous. I think we have your argument. Thank you, Your Honor. All right, sir. Thank you. Mr. McElroy. Thank you, Your Honors. Are you going to start off telling us about the November 22nd statement that was sent over? Yes. In fact, I did address it. Towards the end of my argument, I was talking about that in relation to there was clearly a third party involved. Ms. Simon testified at the trial about why that November 22nd statement was artificially dumped. Because they made a payment or something? Yeah, they made a large $32,000 payment. Then they requested the payoff statement. And then a few days after that, that payment was returned for insufficient funds. And they did it more than once. So clearly someone was involved manipulating the payoffs. We stopped accepting payments in that manner. We would only accept wires from this borrower. That's why they moved to Plan B, which was to just ask for a payoff statement, alter it, and then provide it to the title company. But I wanted to talk about 343-106-G, the very first sentence of it. This is the provision on which the court relied to require us to release our need of trust. If a mortgage servicer submits an incorrect payoff statement to a title insurance company, that did not happen here. We did not submit the altered payoff statement to Texas Title. So this provision cannot be applied. Who is we? The bank. SPS, the mortgage servicer. Well, of course it did. No, not the one that they paid. Well, again, for all. You're saying the findings are. Well, the evidence is that we didn't provide any of the payoff statements that are in the record to Texas Title. The November 22nd payoff statement, Texas Title admits they got by email from Brandon Schott. She admitted that because she did not get it from SPS, she knew she could not rely upon it, and they didn't rely upon it. They didn't pay. Same thing with the real payoff statement. They never saw that until a year after the closing. We faxed that to someone we believed was Brandon Schott. And this altered payoff statement, the evidence shows that it came by fax from fax number 800-878-5776, which is not a fax number that has any affiliation with SPS. So Texas Title never got, ever got, a single payoff statement from SPS. Not the altered one, not the real one, not the November 22nd. How does it work customarily? Do you usually send a statement to the title company directly? I'm sorry? How does it work customarily? Do you usually send a payoff statement to the title company? If a title company requests one from us, we will send it to the title company. If a borrower requests a payoff statement, which happens all the time, and these regulations don't regulate how we communicate with our borrowers, but if a borrower asks us for a payoff statement, we will send it to them.  But then that's what happened in this case. The only payoff statements that we ever generated were for our borrower. They're all addressed to Ephraim, Dill, or Saria. One of the things I've mentioned also is the regulations. The Texas legislature, when they passed Section 343.106, required the Texas Finance Commission to implement regulations to adopt rules governing requests by title insurance companies for payoff information from mortgage services related to home loans, including rules prescribing a standard payoff statement form that must be used by mortgage services. Then the Texas Finance Commission implemented Title VII Texas Administrative Code, Section 155.2, which requires that the title company request, in writing, a payoff statement from the mortgage services, and it has to be sent to the mortgage servicer by mail, email, or fax. Ms. Thompson admitted that she didn't do that. She called. We have no record of this call because she didn't do that. Fact Finding 11 says on December 15th, on or about, Thompson placed multiple calls to SPS requesting a faxed copy of an updated payoff statement, and then on December 15th, Thompson received a payoff statement via fax as requested. Now, you're saying that didn't happen? If it happened, it's a finding that she did not comply with the regulations, both in how she requested it and how she received it, because you can only request it in writing. The finding is that she didn't request it in writing. She has to receive it by mail or email. The finding is that she received it by fax. She requested it by fax, received it by fax. So she's admitting, and the court is finding, that she didn't comply with the regulations, but then the court doesn't address the consequences for failing to comply with those mandatory regulations. Okay. Thank you, sir. Thank you.